**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **REGINA KAY ALEXANDER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:19-cv-00127-M-BP** |
| | § | |
| **ANDREW M. SAUL,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Regina Kay Alexander ("Alexander") filed this action under 42 U.S.C. § 405(g),

seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner")

of her application for supplemental security income ("SSI") under Title XVI of the Social Security

Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and administrative record, the

undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn

**REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

**I.    STATEMENT OF THE CASE**

Alexander filed an application for SSI on June 30, 2017, alleging that her disability began

on that day. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 15-1 at 10, 39–40. The

Commissioner initially denied her claim on November 13, 2017 and denied it again upon

reconsideration on January 24, 2018. Tr. 10. Alexander requested a hearing, which was held before

Administrative Law Judge ("ALJ") Michael Harris on October 9, 2018 via videoconference. *Id.*

The ALJ issued an unfavorable decision on January 7, 2019, finding that based on the application

for SSI, Alexander was not disabled. Tr. 18.

In the decision, the ALJ employed the statutory five-step analysis and established during step one that Alexander had not engaged in substantial gainful activity since June 30, 2017. Tr. 12. At step two, he determined that Alexander had the severe impairments of above knee amputation of the right lower extremity, type II diabetes mellitus, coronary artery disease status post 3 vessel coronary artery bypass grafting, neuropathy, and obesity. *Id.* At step three, the ALJ found that Alexander's impairments did not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13. He found that Alexander had "the residual functional capacity to perform sedentary work as defined in [20 C.F.R. § 416.967(a)] except that the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, or crouch, but never kneel or crawl." Tr. 14.

At step four, the ALJ found that Alexander could perform past relevant work as a dispatcher and a draft designer because this work does not require the performance of work-related activities precluded by Alexander's residual functional capacity ("RFC"). Tr. 17. Because the ALJ determined that Alexander retained the RFC to perform past relevant work at step four, he ruled that Alexander was not disabled and the sequential analysis ended without necessitating consideration of step five. *See* 20 C.F.R. § 404.1520(f); Tr. 17–18.

The Appeals Council denied review on September 7, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The

SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

"The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.    ANALYSIS

Alexander raises two issues on appeal. She claims that the ALJ erred by (1) failing to develop the record regarding her prosthesis and (2) improperly analyzing the evidence under Listing 1.05. ECF No. 19 at 10, 14.

### A.    The ALJ improperly developed the record regarding Alexander's prosthesis.

Alexander underwent a below-the-knee amputation on August 1, 2017, and an above-the-knee amputation on August 6, 2017. *Id.* at 6. She was fitted for a prosthetic device on November

4

27, 2017. *Id.* at 7. She asserts that she cannot use the prosthesis effectively and needs to use a handheld assistive device, such as a cane, walker, or wheelchair. *Id.* at 12–13. She argues that the ALJ failed to make findings about the medical necessity of her use of assistive devices. *Id.* She further contends that the ALJ committed harmful error by failing to develop the record further after he properly discounted the state consultants' medical opinions. *Id.* at 11, 13. She argues that the ALJ should have ordered a consultative examination to provide another medical opinion. *Id.* at 11–12. Alexander asserts that in the hypothetical question the ALJ asked the vocational expert, he should have included limitations to account for Alexander's use of an assistive device. *Id.* at 13–14.

In response, the Commissioner argues that the mere absence of additional medical opinions does not mean the RFC assessment is erroneous. ECF No. 22 at 15. He contends that because the record is detailed and lengthy, the ALJ did not need to order a consultative exam. *Id.* at 16. He also contends that Alexander fails to meet her burden of showing that the ALJ's decision not to order a consultative exam caused her prejudice. *Id.* at 16–17. Alexander further argues that although the record is lengthy, it does not include medical opinions that the ALJ found credible, which is necessary for the ALJ to make a proper disability determination. ECF No. 23 at 2.

In *Ripley v. Chater*, the claimant argued that "the ALJ failed to develop the record fully and fairly when he concluded that [the claimant] was capable of performing sedentary work, even though there was no medical testimony supporting this conclusion." 67 F.3d at 557. The court held that although an ALJ usually should request a medical source statement describing the types of work that the applicant was still capable of performing, the absence of such a statement did not necessarily make the record incomplete. *Id.* Instead, the inquiry should focus upon "whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.* The record in

*Ripley* included a vast amount of medical information establishing that the claimant had a back problem. *Id.* However, because the record failed to clearly establish the effect of that condition on the claimant's ability to work, the court found that substantial evidence did not support the ALJ's RFC determination. *Id.* at 557–58. The court remanded the case and instructed the ALJ to obtain a report from a treating physician. *Id.*

The facts of *Ripley* are similar to those of the present case. Here, the ALJ did not identify medical opinions underlying his determination of the extent and severity of Alexander's physical limitations, especially the impairments caused by her above-the-knee amputation. *See* 20 C.F.R. § 404.1527(a)(1) (defining "medical opinions"); Tr. 10–18. He found that the opinions of state medical consultants Randal Reid, M.D. and Kavitha Reddy, M.D. were unpersuasive. Tr. 17. The parties agree that the ALJ did not consider any other medical opinions. ECF Nos. 19 at 12; 22 at 15. The Commissioner is correct that the record contains hearing testimony, medical records, and other types of evidence that support the ALJ's decision. ECF No. 22 at 16; *see* Tr. 15–16. The ALJ clearly considered and cited this evidence. *See* Tr. 14–16. Nevertheless, "an ALJ may not— without the opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557).

The ALJ did not rely on any medical opinions that clearly establish the effect of Alexander's condition on her ability to work. Instead, it appears the ALJ relied on his own interpretation of the medical and other evidence, which he may not do. *See Tyler v. Colvin*, No. 3:15-CV-3917-D, 2016 WL 7386207, at *5 (N.D. Tex. Dec. 20, 2016) ("[T]he ALJ impermissibly relied on his own medical opinion to develop his RFC determination."). Consequently, substantial

evidence does not support the ALJ's determination of the extent and severity of Alexander's physical limitations. *See Geason v. Colvin*, No. 3:14-CV-1353-N, 2015 WL 5013877, at *5 (N.D. Tex. July 20, 2015) ("Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence.").

The Court must then determine whether the ALJ's error was harmless. "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citations omitted). Here, it is not inconceivable that the ALJ would have reached a different conclusion if he had considered medical opinions when making the disability determination. *See Thornhill v. Colvin*, No. 3:14-CV-335-M, 2015 WL 232844, at *11 (N.D. Tex. Jan. 16, 2015) (prejudice existed "where the ALJ could have obtained evidence that might have changed the result—specifically, a medical source statement"). Therefore, the ALJ's error was not harmless, and remand is appropriate on the issue.

### B.    The ALJ properly analyzed the evidence under Listing 1.05.

Alexander argues that because of complications from her above-the-knee amputation, she meets the criteria under Listing 1.05 and therefore is disabled. ECF No. 19 at 15. She contends that the ALJ erred by failing to explain why her impairment did not meet the Listing criteria and that substantial evidence supports a conclusion that Alexander meets the criteria for a presumptive finding of disability. *Id.* at 14–15.

The Commissioner responds that Alexander fails to meet her step three burden of showing that she has "stump complications [that] result in a *medical inability* to use her prosthetic limb to ambulate effectively." ECF No. 22 at 11, 13 (emphasis in original). He argues that the ALJ properly identified and explained each listing that he considered, and the record does not

demonstrate that stump complications caused any of the difficulties Alexander may have had in using the prosthesis. *Id.* at 9, 13. The Commissioner contends that *Audler v. Astrue*, which held that "the ALJ erred in failing to state any reason for her adverse determination at step 3," is distinguishable from Alexander's case because the ALJ in *Audler* failed to identify the listed impairments for which the claimant's symptoms failed to qualify or explain how she reached the conclusion that the claimant's symptoms did not meet any listed impairment. *Id.* at 9 (citing *Audler*, 501 F.3d at 448). Alexander further argues that her case is like *Audler* because in both cases, the ALJ did not explain how the claimant's symptoms were not severe enough to meet a listed impairment. ECF No. 23 at 1.

At step three, disability exists if a claimant shows that his impairment satisfies the criteria of at least one of the impairments in the Listing. *Audler*, 501 F.3d at 448 ("The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis . . . ."); 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ is responsible for considering all relevant evidence in the record about the impairment, including findings from medical sources, and deciding whether an impairment satisfies the Listing criteria. 20 C.F.R. § 416.926(c), (e). Medical equivalence exists when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of these criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). A court will find that substantial evidence supports the ALJ's finding at step three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

When the ALJ's decision at step three is at issue, a reviewing court must (1) determine whether the ALJ supported the step-three determination with a discussion of the relevant evidence, and, if the ALJ failed to do so, (2) determine whether the error was harmless. *Audler*, 501 F.3d at 448. "Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N. D. Tex. May 13, 2010) (citing *Audler*, 501 F.3d at 448).

Alexander contends that the ALJ's analysis of whether complications from her amputation meet or equal Listing 1.05 amounts to a "bare conclusion" that the *Audler* decision prohibits. ECF No. 19 at 14. Listing 1.05 addresses "[a]mputation (due to any cause)" of, in relevant part, "[o]ne or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 105. Section 1.00B2b defines an inability to ambulate effectively as "an extreme limitation of the ability to walk." *Id.* § 1.00B2b. Ineffective ambulation "is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00B2b(1). Further, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. . . . [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker . . . ." *Id.* § 1.00B2b(2).

9

Alexander argues that her impairments meet the Listing 1.05 criteria because she cannot effectively use her prosthesis and must use an assistive device. ECF No. 19 at 12, 15. The ALJ noted the criteria of Listing 1.05 and found that Alexander does not meet the requirements because "the medical record does not evidence any of the criteria stated therein . . . ." Tr. 13. Later in the decision, he discussed relevant evidence, noting Alexander's reports that she had stump pain and could only use her prosthesis for limited periods of time, as well as reports that she "had continued difficulty with some exertional and postural activities," but had "only a little bit of difficulty with her 'usual work, housework, or school activities.'" Tr. 14–16. Alexander offers evidence showing her difficulties using the prosthesis, but she does not demonstrate that she has a medial inability to ambulate effectively with her prosthesis under the criteria of Listing 1.05. *See* ECF Nos. 19, 23. Her "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-cv-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted,* No. 4:15-cv-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016). Alexander has not met her burden as to the ALJ's analysis under Listing 1.05. The record reflects that substantial evidence supports the ALJ's step three finding, and remand on this issue is not proper.

## IV.    CONCLUSION

The Court must reverse the ALJ's decision and remand the case for further consideration on one of Alexander's two grounds for appeal. The ALJ committed reversible error in his RFC determination by not explaining why he did not order a consultative exam after rejecting both medical opinions in the record. However, the ALJ properly concluded that Alexander's physical limitations did not meet or equal one of the Listings. Accordingly, the undersigned **RECOMMENDS** that Chief Judge Lynn **REVERSE** the Commissioner's decision and

**REMAND** this action for further proceedings.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on July 9, 2020.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE